IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CUOZZO SPEED TECHNOLOGIES LLC, | |
| Plaintiff, | |
| | Civil Action No. 12-03626 (CCC)(JAD) |
| v. | |
| | **JURY TRIAL DEMANDED** |
| TOMTOM, INC., and MAZDA MOTOR OF AMERICA, INC., | |
| Defendants. | |
| CUOZZO SPEED TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 12-3624 (CCC) (JAD) |
| v. | **JURY TRIAL DEMANDED** |
| GENERAL MOTORS COMPANY, | |
| Defendant. | |

**<u>PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF</u>**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................... 1

  A.   Preliminary Statement .................................................... 1

  B.   Overview of the Technology of the Patent-in-Suit ....................... 2

  C.   Person of Ordinary Skill in the Art ................................. 4

II.   CUOZZO'S PROPOSED CLAIM CONSTRUCTIONS .......................... 4

  A.   Colored Display............................................................ 4

  B.   Speedometer ................................................................ 8

  C.   Speedometer integrally attached to said colored display ............. 10

  D.   Speed Limit/ Relevant Speed Limit ............................. 19

  E.   Delineation/Delineate Terms...................................... 20

  F.   Speed Limit Database Terms ....................................... 24

  G.   Generating tone if said vehicle exceeds said speed limit.............. 25

  H.   Modifying the limit indicator as defined in claim 1...................... 27

  I.   Adjusts said colored display independently of said speedometer. 28

III.   CONCLUSION........................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH,*
224 F.3d 1308 (Fed.Cir.2000)..................................................................23

*Applied Med. Res. Corp. v. U.S. Surgical Corp.,*
448 F.3d 1324 (Fed.Cir.2006)..................................................................23

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
388 F.3d 858 (Fed. Cir. 2004)..................................................................25

*Exxon Research & Eng'g Co. v. U.S.,*
265 F.3d 1371 (Fed. Cir. 2001)................................................................26

*Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,*
909 F.2d 1464, 1469 (Fed. Cir. 1990) ......................................................6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,*
381 F.3d 1111 (Fed. Cir. 2004)................................................................14

*Intel Corp. v. Broadcom Corp.,*
172 F. Supp. 2d 478 (D. Del. 2001).........................................................7

*KCJ Corp. v. Kinetic Concepts, Inc.,*
223 F.3d 1351 (Fed. Cir. 2000)................................................................18

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
521 F.3d 1351, 1362 (Fed. Cir. 2008) ......................................................2

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ......................................passim

*Safety Rail Source, LLC v. Bilco Co.,*
656 F.Supp.2d 468 (D.N.J. 2009) ............................................................15

*St. Clair Intellectual Prop. Consultants v. Acer, Inc.,*
2012 U.S. Dist. LEXIS 111021 (D. Del. Aug. 7, 2012)....................12, 24

*Texas Digital Syss., Inc. v. Telegenix, Inc.,*
308 F.3d 1193 (Fed. Cir. 2002).................................................................2

*Thorner v. Sony Computer*,
669 F.3d 1362 (Fed. Cir. 2012)....................................................................1

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 Fed. Cir. 1997 ................................................................1, 25

*Vivid Tech., Inc. v. Am. Science & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999)....................................................................1

S<small>TATUTES</small>

35 U.S.C. § 112 ......................................................................................26, 1

O<small>THER</small> A<small>UTHORITIES</small>

MPEP § 2114 .............................................................................................6

Microsoft Computer Dictionary 145 (4th ed. 1999)..................................6

New Shorter Oxford English Dictionary 1386 (1993)…………………………13

Random House Webster's Unabridged Dictionary 990 (2d ed. 2001)……....……13

Webster's II New College Dictionary 72 (1995)......................................13

Webster's II New College Dictionary 222 (1995)......................................5

Webster's II New College Dictionary 299 (1995)....................................20

Webster's Third New International Dictionary 2189 (2002) ......................8

I.      INTRODUCTION

A.      Preliminary Statement

Under a proper claim construction analysis, the inventor's choice of words is honored in order to define the invention consistent with the full scope of the plain and ordinary meanings of those words. *Thorner v. Sony Computer*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). Cuozzo Speed Technologies LLC's ("Cuozzo") proposed constructions are consistent with the plain language of the claims, confirmed and illuminated by the intrinsic and extrinsic record, and clarify the scope of the claims where necessary.

That last point is important. The Federal Circuit warns against over-construing claim language. "It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 Fed. Cir. 1997). Restating every claim term, as Defendants propose, is unnecessary; "only those terms that are in controversy need to be construed, and only to the extent necessary to resolve the controversy." *Vivid Tech., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Restraint is appropriate to avoid the dangers of reading limitations into the claims and distorting the plain meaning of the claim terms chosen by the inventor to define his invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) (recognizing "section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant").

Defendants' proposed claim constructions suffer from three fundamental conceptual flaws that cannot be reconciled with the language of the patent or with prevailing law:

- Defendants' proposals impermissibly limit the scope of the claims to a mechanical/analog embodiment when other (electronic) embodiments are disclosed and claimed;[1]

- Defendants erroneously read limitations from the specification into the claims to avoid infringement;[2] and

- Defendants ignore the Federal Circuit's admonition to construe only terms for which there is a material and genuine dispute over claim scope.[3]

## B.     Overview of the Technology of the Patent-in-Suit

Cuozzo is the owner of U.S. Patent No. 6,778,074 (the "'074 Patent" or "Patent-in-Suit") (attached as Exh. A)[4], titled "Speed Limit Indicator and Method for Displaying Speed and the Relevant Speed Limit."  The invention disclosed in the '074 Patent generally relates to "a new and improved speed limit indicator and method for displaying speed and the relevant speed limit that can be used for

---

[1] *See, e.g., Phillips*, 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

[2] *See id.* at 1320 (recognizing the importance of "discern[ing] the ordinary and customary meanings attributed to the words themselves" in the claims before consulting the written description because doing so "invites a violation of our precedent counseling against importing limitations into the claims") (discussing *Texas Digital Syss., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

[3] *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

[4] Exhibits A-H are attached to the certification of Cabrach Connor, and for brevity are referenced in the brief simply as Exhibit X.

displaying the current speed of a vehicle and how it relates to the legal speed limit for the current location in which the vehicle is traveling."  Exh. A, '074 Patent, col. 2, lines 18-23.  Implementations of the inventive speed limit indicator provides significant safety benefits, such as:  (1) "allow[ing] the driver to always be aware of the current legal speed limit" without having to look for speed limit signs (*id*. at col. 3, lines 63-65); (2) "automatically notify[ing] the driver if he is speeding without requiring him to remove his eyes from the road" (*id*. at col. 4, lines 3-6); and (3) allowing the driver to determine quickly whether the vehicle's speed is exceeding the speed limit in the vehicle's current location by looking at the speed limit indicator (*id*. at Fig. 1).

The '074 Patent describes several exemplary embodiments of the inventive speed limit indicator.  In all of the embodiments, the inventive speed limit indicator comprises a speedometer, a colored display, and a display controller that adjusts the colored display to show which speed readings are in violation of the legal speed limit at the vehicle's present location (which may be determined by a global positioning system receiver).  In one exemplary embodiment, the colored display is a rotatable, red plastic colored filter disposed over an analog speedometer dial. Exh. A, '074 Patent, col, 5, lines 8-12.  In another exemplary embodiment, the colored display is a liquid crystal display.  *Id*. at col. 6, lines 11-14.  In a further

exemplary embodiment, the speedometer comprises a liquid crystal display, and the colored display is the liquid crystal display.  *Id*.; *see also* claims 6 and 18.

### C.    Person of Ordinary Skill in the Art

Absent a patentee electing to be his own lexicographer, claim terms are to be construed in accordance with their "ordinary and customary meaning," from a perspective of a person of ordinary skill in the art at the time of the invention. *Phillilps v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  With respect to the '074 Patent, a person of ordinary skill in the art at the time of the invention would be a person with a bachelor's degree in science or engineering, and with a general understanding of electronic systems, design, and/or engineering or equivalent experience or training.

## II.    CUOZZO'S PROPOSED CLAIM CONSTRUCTIONS

### A.    "Colored Display"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **Colored Display** | No Construction Necessary.<br><br>Alternate construction:<br>a device for presenting information in one or more colors | a device that displays a colored region for presenting speeds above the legal speed limit |

Cuozzo contends that no construction of this claim term is necessary.  The term is used according to its plain and ordinary meaning, and it is easily understood by lay persons. *See Phillips*, 415 F.3d at 1313.

To the extent the Court determines that this claim term requires construction, Cuozzo submits that "colored display" should be construed as "a device for presenting information in one or more colors."  It appears the Parties generally agree that a "display" is "a device for presenting or displaying" information.  The dispute is whether the modifier "colored" should mean "one or more colors" as proposed by Cuozzo, or "a colored region presenting speeds above the legal speed limit" as proposed by Defendants.  All of the intrinsic evidence supports Cuozzo's proposed construction of "colored display," whereas Defendants' proposed construction is contrary to the plain and ordinary meaning of the term and would render claim language superfluous.

The claim language supports Cuozzo's proposed construction, because independent claims 1 and 10 of the '074 Patent recite a colored display that delineates speed readings that are in violation of the speed limit at the vehicle's present location.  The modifier "colored" simply requires the use of one or more colors on the display device.[5]  The use of one or more colors achieves one of the stated objects of the invention—to allow the driver to determine quickly whether the vehicle's speed is exceeding the speed limit in the vehicle's current location by looking at the speed limit indicator.

---

[5] "Colored" is defined as "having color."  Webster's II New College Dictionary 222 (1995) (Attached as Exh. C).

The specification broadly describes a "colored display" as a device for presenting information in one or more colors.  In one described embodiment of the invention, the colored display is a "red plastic filter."  Exh. A, '074 Patent, at col. 5, line 10.  Thus, in this embodiment, the colored display may be a device for presenting information (a "plastic filter") in one or more colors ("red").  In another embodiment, the colored display is a liquid crystal display, which is capable of presenting information in one or more colors.  *Id*. at col. 6, lines 10-14.[6]

Accordingly, the plain and ordinary meaning and all of the intrinsic evidence support Cuozzo's proposed construction of "colored display" as "a device for presenting information in one or more colors."

Defendants' proposed construction fails for at least two reasons.  First, Defendant's proposed construction is contrary to the plain and ordinary meaning of the term "colored display."  Defendants improperly attempt to squeeze a functional limitation into the term's meaning by requiring that the colored display always "presents speeds above the legal speed limit."  *See Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed. Cir. 1990) (discussing the danger in construing apparatus claims in terms of what they do (their function), rather than what they are (their structure)); *see also,* MPEP § 2114 (focusing on structural

---

[6] In the electronic computer arts, a "display" is "the visual output device of a computer."  Microsoft Computer Dictionary 145 (4th ed. 1999) (attached as Exh. D).

aspects of claimed subject matter) (*available at* http://www.uspto.gov/web/ offices/pac/mpep/s2114.html).

No aspect of the plain and ordinary meaning of "colored display" which requires that the display is limited to displaying a specific type of information (i.e., speeds above the legal speed limit). The term only requires that the display be "colored" by presenting information in one or more colors.

Further, Defendants' proposed construction of "colored display" renders claim language superfluous in violation of fundamental claim construction principles. *See Intel Corp. v. Broadcom Corp.*, 172 F. Supp. 2d 478, 497 (D. Del. 2001) (declining to adopt a construction that would render dependent claim language superfluous). Independent claim 1, for example, recites "a colored display to delineate which speed readings are in violation of the speed limit at a vehicle's current location." Defendants' proposed construction of "colored display" is a device for "presenting speeds above the speed limit," which is simply a paraphrase of the express claim language "delineate which speed readings are in violation of the speed limit." Substituting Defendants' proposed construction would thus render express claim language redundant.

Therefore, to the extent any construction is necessary for this easily understandable term, only Cuozzo's construction is consistent with the plain and

ordinary meaning of the term, all of the intrinsic evidence, and principles of claim construction.

**B.    "Speedometer"**

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| Speedometer | an instrument with components for measuring and displaying speed | a device that indicates vehicle speed with speed denoting markings |

The parties agree that a "speedometer" displays speed but dispute (i) whether a "speedometer" includes a component for measuring speed; and (ii) whether a "speedometer" must be limited to indicating speed with speed denoting markings.

The "speedometer" claimed and described in the '074 Patent requires a component for measuring speed.[7]   Independent claim 1, for example, recites "a speedometer."  Claim 4, which depends from claim 1, recites that the "speedometer comprises:  a needle; an axle having opposing ends with one end attached to said needle; and a speedometer cable having opposing ends with one end attached to said axle."   In this claimed embodiment, clearly the speedometer cable must be attached to a component that measures speed.  The speedometer cable translates this measurement into a rotational force to rotate the axle (and needle) to display

---

[7] The plain and ordinary meaning of a speedometer is to measure *and* display speed. *See, e.g.,* Webster's Third New International Dictionary 2189 (2002) (defining speedometer as "a device (as on an automobile) that measures distance as well as speed") (attached as Exh. E).

the current speed of the vehicle.  Without a component for measuring speed, there would be no way for the speedometer to display speed.  A simple analogy is a traditional mercury-based thermometer.   A traditional thermometer has a component to measure temperature (liquid mercury) and a component to display the measured temperature (a scale).  Without the liquid mercury, the thermometer is useless.  Thus, the claimed "speedometer" requires a component to measure speed, as well as a component to display the measured speed.

In addition to measuring speed, the claimed "speedometer" is required to display speed.  However, the display of speed is not limited solely to the use of speed denoting markings, as Defendants propose.  Such a construction would be contrary to the plain and ordinary meaning of speedometer and would violate the doctrine of claim differentiation.

First, there is no definition of "speedometer" which limits the display of speed to the use of speed denoting markings.  Second, dependent claim 5, which depends from dependent claim 4 and independent claim 1, recites that the "speedometer *further* comprises . . . [a] plurality of speed denoting markings affixed to said backplate."  Thus, the meaning of "speedometer" cannot be limited to a device with "speed denoting markings," because (1) this limitation is the subject matter of a dependent claim and independent claims are presumed to have a broader scope than dependent claims, and (2) inclusion of this

limitation would render the limitation recited in claim 5 superfluous. *See Phillips*, 415 F.3d at 1314-15 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim").

Therefore, Cuozzo's proposed construction of "speedometer" as "an instrument with components for measuring and displaying speed" should be adopted.

### C.     "Speedometer integrally attached to said colored display"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| A speed limit indicator comprising: . . . a speedometer **integrally attached** to said colored display | an instrument with components for measuring and displaying speed that are attached or combined to work as a complete unit with a device for representing information in one or more colors | TomTom Proposes: a device that indicates vehicle speed with speed denoting markings physically joined together as a unit to a device that displays a colored region for presenting speeds above the legal speed without each part losing its own separate identity <br><br> GM and Mazda Propose: a device that indicates vehicle speed with speed denoting markings physically joined together as a unit to a device that displays a colored region for presenting speeds above the legal speed limit without each part losing its own separate identity such that the driver can immediately ascertain both his speed and its relation to the |

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| | | prevailing speed limit without the need of a mental comparison and regardless of the vehicle's speed |

"Integrally attached" describes the structural relationship between the speedometer and colored display.  The dispute, in practical terms, is whether the claims encompass a device in which the speedometer and colored display may share the same liquid crystal display (as Cuozzo proposes) or whether the speedometer must a separate liquid crystal display from the liquid crystal display that is the colored display (as Defendants allege).[8]

Contrary to Defendants' proposal, Cuozzo's proposed construction properly gives weight to both "integrally" and "attached" and is consistent with the plain and ordinary meaning of the term, the intrinsic evidence and the understanding of one of skill in the art at the time of the invention.

1. Cuozzo Construction Reflects the Ordinary Meaning of "Integrally Attached."

In describing an embodiment of the invention, the specification states,

---

[8] Defendants' proposed construction is based on its own preliminary interpretation of "integrally attached" applied by the Patent Trial and Appeal Board (the "PTAB") in the ongoing *inter partes* review ("IPR") of claims 10, 14 and 17 of the '074 patent.  The PTAB confirmed the patentability of the remaining seventeen claims.  The PTAB's preliminary interpretation was based on an incomplete record provided by Garmin, and neither Garmin nor Cuozzo provided any proposed constructions or any claim construction briefing on "integrally attached" or any other claim term.  The PTAB has not provided a final interpretation of "integrally attached."  *See* PTAB Decision to Initiate IPR, attached as Exhibit H.

"Speedometer 12 has . . . a colored display 18 . . .."  '074 Patent at 5:8-10.  The colored display 18 is, like the speed denoting markings 16 and the needle 20, a component of the speedometer 12.  Thus, the colored display 18 is joined or combined with the speedometer 12 to work as a unit, i.e., a speed limit indicator that provides an integrated display for the driver.  Professor Morris explained that the "integrated display" describes the resultant combination of the speedometer and colored display that displays the speed and speed limit in the same location.  Morris Decl. at ¶¶ 30-31 (attached as Exh. F).

Defendants' construction excludes the embodiment in which the colored display 18 is a *component* of the speedometer 12 (Exh. A, '074 Patent, at 5:8-11) and the colored display "take[s] the form of a liquid crystal display."  Exh. A, '074 Patent, at 6:11-14.  Claim 2, for example, recites that the "colored display is a liquid crystal display," and claim 6, for example, recites that the "speedometer comprises a liquid crystal display."  There is no claim or any disclaimer in the description that requires the colored display and the speedometer to be separate liquid crystal displays.  Without such a clear disavowal of claim scope, "integrally attached" should be construed to encompass a device in which the colored display and the speedometer share a single liquid crystal display.  *St. Clair Intellectual Prop. Consultants v. Acer, Inc.*, No. 09-354-LPS (consol.), 2012 U.S. Dist. LEXIS 111021, at *17-18 (D. Del. Aug. 7, 2012) (claim terms should have their plain and

ordinary meaning if there is "no inventor lexicography, disavowal, or disclaimer that would justify a departure from the plain meaning as understood by a person having ordinary skill in the art."). Professor Morris explained how these disclosures, in his opinion, would teach one of skill in the art "to combine the speedometer readout with the speed limit information on the LCD." Exh. F, Morris Decl., at ¶¶ 27-29. The resulting electronic embodiment would have a common LCD component shared by the speedometer and colored display. *Id*. at ¶ 32.

Cuozzo's proposed construction, "joined or combined to work as a complete unit" properly includes the exemplary embodiments of the invention claimed and described in the '074 Patent.

2. The Specification's Disclosure is Consistent With the Ordinary Meaning of "Integrally Attached."

The '074 Patent uses the term "integrally attached" according to its plain and ordinary meaning. The word "attached" is generally defined to mean "connect[ed] or join[ed]; to connect as an adjunct or associated part." Webster's II New College Dictionary 72 (1999) (attached as Exh. C). The word "integrally" is generally defined to mean "necessary to the completeness of the whole; consisting or composed of parts that together constitute a whole" or formed as a unit with another part. Random House Webster's Unabridged Dictionary 990 (2001) (attached as Exh. G); *see also*, The New Shorter Oxford English Dictionary 1386

(1993) ("necessary to the completeness or integrity of the whole, not merely attached") (also included in Exhibit G).   "Plaintiff's proposed construction is consistent with the plain and ordinary meaning of the reflecting the ordinary meanings of "attached" ("joined or combined") and "integrally" ("joined to work as a complete unit").

Defendants' proposed construction conflicts with the plain and ordinary meaning of the term for at least two reasons.  First, it adds several extraneous, and thus potentially narrowing, limitations to the term.  For example, their construction requires "discrete parts" that are "physically" joined.  There is no support for these limitations based on the plain and ordinary meaning of the term "integrally attached," as neither concept is found in any of the definitions.

Defendants also require joining the parts but "without each part losing its own separate identity."  In every mechanical and electrical situation in which two parts are attached, they always keep their respective identities.  The only time "parts" might lose their separate identities is perhaps a chemical context in which a reaction takes place, and the resulting product cannot be separated into the original "parts."  However, that is certainly not the case here, and there is no support in the plain and ordinary meaning of "integrally attached" which supports Defendants' limitation.

Second, Defendants' proposal gives no substantive meaning to the term "integrally."  The word "attached" without the "integrally" modifier is used in other claims of the '074 Patent, and it appears that Defendants' construction would similarly apply to the meaning of "attached" alone.  For example, claim 15 recites, inter alia, "a needle" and "an axle having opposing ends with one end attached to said needle."  In this claim, Defendants' construction of "integrally attached" would apply to the use of "attached" – i.e., there are "discrete parts" (the axle and the needle) that are "physically joined together as a unit" (one end of the axle is physically joined with the needle) and "without each part losing its own separate identity" (the needle is still the needle and the axle is still the axle).  In construing claim language, each term in a claim must be given meaning.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). Cuozzo's proposed construction gives meaning to "integrally" in that the parts "work as a complete unit" such that one part is a component of the other part or a component is shared by the parts.

The Court reached a similar conclusion in *Safety Rail Source, LLC v. Bilco Co.*, 656 F. Supp. 2d 468 (D. N.J. 2009) in construing the term "integrally connecting."  Rejecting a proposed construction that merely required "that parts be joined to form a whole," the Court reasoned that weight must be given to "integrally."  *Id.* at 483 (quoting *Burns, Morris & Stewart Ltd. P'ship v. Masonite*

*Int'l Corp.*, 401 F.Supp.2d 692, 699-700 (E.D. Tex. 2005) ("If attached or connected is all that is meant, then what purpose is served by integrally?  Integrally implies something that is part of the whole or is needed for completeness") (internal quotations omitted) (citing Merriam-Websters Collegiate Dictionary 606 (10th ed. 2002), which is consistent with the definitions in Plaintiff's Exh. G)).

Ultimately, the Court in *Safety Rail Source* construed "integrally connecting" as: "integrally connecting requires that the connected pieces be joined so as to make up a single complete piece or unit, in such a way that the connection becomes part of [the single complete unit]."  656 F. Supp. 2d at 468 (internal quotations omitted).  The Court's conclusion is similar to Cuozzo's proposed construction ("joined or combined to work as a complete unit") because they both comport with the plain and ordinary meaning of "integrally attached."

3. <u>Doctrine of Claim Differentiation Supports Cuozzo's Proposed Construction.</u>

Fundamentally, an independent claim must have a broader scope than the claims which depend from it, and different terms in different claims are presumed to give each claim a different scope.  Independent claims 1 and 10 recite that the "speedometer [is] integrally attached to [the/said] colored display."  As mentioned above, several claims which depend directly or indirectly from claims 1 and 10 are presumed to have a narrower scope and illustrate why Defendants' construction is erroneously narrowed.  They also confirm that independent claims 1 and 10 must,

in fact, encompass the case of a single electronic display that itself operates as a speedometer (or at least display portion of a speedometer) and a colored display.

For example, claim 10 and the dependent structure of certain of its dependent claims are shown schematically below to illustrate that the term "integrally attached" should be given a construction which encompasses a single electronic display that operates as a speedometer (or at least the display portion of a speedometer) and a colored display.



Based upon the limitations recited in the dependent claims, "integrally attached" in claim 10 should be construed to encompass both mechanical and electronic embodiments of the invention. Dependent claim 14 is directed to a mechanical embodiment of the colored display of the present invention, and dependent claims 15 and 16 recite limitations which are directed to a mechanical

embodiment of the speedometer (claim 15 – "said speedometer comprises"; claim 16 – "said speedometer further comprises") of the present invention.

For example, the axle, the speedometer cable, the backplate, the plurality of speed denoting markings affixed to the backplate, and the housing enclosing the backplate are mechanical elements of an embodiment of the speedometer.   In contrast, claims 12 and 18 are directed to electronic embodiments of the invention. Professor Morris explained that one skilled in the art would understand these distinct mechanical and electronic embodiments from the disclosure, because modifying a mechanical embodiment with a rotating LCD colored display, for example, would not make sense.  *See* Exh. F, Morris Decl. at ¶¶ 24-28.

Dependent claim 12 requires the colored display to be a liquid crystal display, and dependent claim 18 requires that the speedometer comprises a liquid crystal display.   Neither claim 12 nor claim 18 require the speedometer's liquid crystal display to be separate from the colored display's liquid crystal display.   In fact, the use of the open-ended term "comprising" and the antecedent "a" in claim 18 indicates that the speedometer includes, but is not limited to, "one or more" liquid crystal displays.  It is commonly understood that the "indefinite article[s] 'a' or 'an' in patent parlance carr[y] the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000); *see also* Robert C. Faber,

Landis on Mechanics of Patent Claim Drafting 531 (3d ed. 1990). Thus, claim 18 would certainly encompass a single electronic display that itself operates as a speedometer (or at least display portion of a speedometer) and a colored display. Because claim 18 depends from claim 10, claim 10 has a broader scope than claim 18, and "integrally attached" should not exclude a single electronic display that itself operates as a speedometer (or at least display portion of a speedometer) and a colored display.

Cuozzo's proposed construction ("joined or combined to work as a unit") encompasses all of the described embodiments of the invention, and given the recitation of dependent claims 12 and 18, must encompass a single electronic display that itself operates as a speedometer (or at least display portion of a speedometer) and a colored display.

### D.    "Speed Limit"/ "Relevant Speed Limit"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "**speed limit**" <br><br>"**relevant speed limit**" <br><br>Claims 1, 2, 6-13, and 18-20. | legal speed limit | legal speed limit |

Cuozzo agrees with Defendants that the correct construction that should be adopted by the Court for these claim terms is "legal speed limit."

### E.  Delineation/Delineate Terms

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "to delineate which speed readings are in violation of the speed limit at a vehicle's current location" | No construction necessary.<br><br>Alternatively, [to represent visually or pictorially / a visual or pictorial representation of] speed values above the maximum speed at which a vehicle is permitted to travel at a vehicle's current location | to indicate the boundary of the colored region that represents every speed on the speedometer that is above the legal speed limit |
| "to continuously update the delineation of which speed readings are in violation of the speed limit at a vehicles present location" | No construction necessary.<br><br>Alternatively, to continuously update the pictorial or visual representation of which speed readings are above the maximum speed at which a vehicle is permitted to travel at a vehicle's current location | to continuously update the boundary of the colored region that represents every speed on the speedometer above the legal speed limit in response to the vehicle's location and regardless of the vehicle's speed |

The first dispute with regard to these terms is the meaning of "delineate." Cuozzo proposes that "delineate" should be construed, if necessary, as "to represent visually or pictorially," which is consistent with the plain and ordinary meaning of the term.  Webster's II New College Dictionary 299 (1995) ("delineate" is defined as "to represent pictorially or visually") (Exh. C).

Cuozzo's construction also comports with the claim language.  Claim 1 for example, recites "a colored display to delineate which *speed readings* are in

violation of the speed limit at a vehicle's current location."  Thus, the colored display is required to "delineate" "speed readings" if such speed readings are "in violation of the speed limit."  A "speed reading" is a speed of the vehicle as measured by a speedometer at a given time.  Thus, at a given time, there is only a single speed reading associated with the vehicle, but there are multiple speed readings over time as the vehicle travels.  The "speed readings" are distinct from, for example, the "speed denoting markings" on the speedometer display.  The colored display delineates the speed readings (as they are measured) that are in violation of the speed limit with a visual or pictorial representation (i.e., one or more colors).

Thus, "delineate" should be construed as "to represent visually or pictorially" and "delineation" should be construed as "a visual or pictorial representation."

Defendants propose that "delineate" means "to indicate by the boundary of the colored region."  Obviously, the plain and ordinary meaning of "delineate" is not so narrowly defined, and in fact, does not include any of the terms or concepts proposed by Defendants.  Further, there is no doubt that Defendants' proposed construction improperly imports limitations from one of the embodiments described in the '074 Patent.  While one of the embodiments describes a red plastic filter which is rotated on a speedometer display to identify speed markings which

would be in violation if a speed reading equaled one of such identified speed markings, the term "delineate" cannot be limited to this one embodiment.

The second dispute is whether the delineation must be of "speed values" in violation of the speed limit (as Cuozzo proposes) or "every speed on the speedometer" in violation of the speed limit.  As noted above, the claims require that the delineation be with respect to "speed readings," and a "speed reading" is a measured speed of the vehicle at a given time.  Cuozzo's proposed construction comports with the intrinsic evidence, interpreting "speed readings" as "speed values" i.e., measured speeds.  Defendants' proposed construction is not supported by any of the intrinsic evidence.  There is no recitation in the claims or description in the '074 Patent which requires that "every" speed in violation of the speed limit be identified at a given time.   Such an interpretation would exclude the embodiment in which the colored display is a rotatable red plastic filter, which has unchangeable dimensions.

For example, if the speed limit is 50mph, the red plastic filter extends over all of the speed denoting markings from 50mph to 100mph, and the speed denoting markings on the speedometer display go up to 120mph, the speed denoting markings from 101-120mph would not be encompassed by the "boundary of the colored region" as required by Defendants' construction.  Further, if the speed limit decreased to 40mph, the red plastic filter would extend over the speed

denoting markings from 40mph to 90mph, and the speed denoting markings from 91-120mph would not be encompassed by the "boundary of the colored region" as required by Defendants' construction.

Also problematic with Defendants' proposed construction is the conflation of "speed readings" and "speed on the speedometer."  Although vague, Defendants seem to propose that all of the speed denoting markings above the speed limit on a speedometer display must be encompassed by the boundary of the colored region. However, the claim term does not recite "speed denoting markings"; the claim term recites "speed readings."  As explained above, the "speed readings" are measured speeds, whereas the speed denoting markings are static in one described embodiment.  In fact, "speed denoting markings" are recited in other claims.  It is presumed that different claim terms have different meanings and different scopes. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings."); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").  Defendants' proposed construction, therefore, should not be adopted.

### F.    Speed Limit Database Terms

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| Regional speed limit database (claim 20) | No construction necessary. | a database having legal speed limits corresponding to geographic regions |
| Database of locations and their corresponding speed limits (claims 8 and 11) | | Database having legal speed limits corresponding to geographic locations |
| Uploading current information to regional speed limit database (claim 20) | | transferring information related to the current position from the speed limit indicator to a database having legal speed limits corresponding to geographic regions |
| Obtaining speed limit for said vehicle location from said database (claim 20) | | obtaining the legal speed limit for the vehicle's current location from said database |

No construction for these terms is necessary because they are used according to their ordinary and commonly understood meaning.  "There has been no inventor lexicography, disavowal, or disclaimer that would justify a departure from the plain meaning as understood by a person having ordinary skill in the art."  *St. Clair*, 2012 U.S. Dist. LEXIS 111021, at *17.

Notably, Defendants' proposed constructions simply rearrange or rephrase the language of these easily understood claim terms. For example, with respect to the claim term "obtaining speed limit for said vehicle location from said database,"

Defendants simply rephrase "obtaining speed limit for" to "obtaining the legal speed limit for," and substitute "the vehicle's current location" for "said vehicle location." Similarly, although Cuozzo does not dispute that a "database of locations and their corresponding speed limits" is a "database having legal speed limits" wherein the speed limits "correspond[] to geographic locations," Defendants' proposal is not an actual construction, but rather simply a rearrangement of claim terms. However, mere rephrasing or substitution of plain claim language is unnecessary for purposes of claim construction. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004).

Accordingly, Defendants' purported constructions, which simply rearrange the order of these claims terms, should be rejected.

**G. "Generating tone if said vehicle exceeds said speed limit"**

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "generating tone if said vehicle exceeds said speed limit"<br><br>Claim 20 | **No construction necessary.** | generating an audible warning in the event the vehicle speed exceeds the legal speed limit at the vehicle's current location |

Cuozzo submits that no construction for this term is necessary. Defendants proposed construction is problematic for two reasons. First, Defendants simply substitute "in the event" for the easily understood term "if." This proposed construction is redundant and wholly unnecessary. *U.S. Surgical Corp. v. Ethicon,*

*Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (cautioning against construing terms in an "exercise in redundancy").

Second, Defendants attempt to limit the scope of the term "tone" to an "audible warning."  "Tone" is easily understood and used consistent with its ordinary meaning.  Contrary to Defendants' proposed construction, a tone need not be limited to a "warning," and the '074 Patent describes several embodiments in which a "tone" is generated without limiting the tone to a "warning." Exh. A, '074 Patent, at 2:62 ("generate a tone if the vehicle is speeding"); *id*. at 5:31-32 ("tone generator to generate a tone").  Although the specification indeed describes embodiments providing "an audible warning of excessive speed," (*id*. at 1:25-27), Defendants' proposed construction limiting the scope of the term "tone" to a single disclosed embodiment is clearly improper, and accordingly, should be rejected. *Phillips*, 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

### H.    "Modifying the limit indicator as defined in claim 1"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| Modifying the limit indicator as defined in claim 1<br><br>Claim 20 | **No construction necessary.** | indefinite under 35 U.S.C. § 112<br><br>or<br><br>[claim 20 is a method claim depending from or otherwise incorporating all limitations of claim 1] |

Contrary to Defendants' argument, the reference to claim 1 in claim 20 does not render the claim indefinite.  *See Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.").   In the IPR, the PTAB found "claim 20 specifically refers to the structure of the speed limit indicator of claim 1" and "is dependent on claim 1."   Decision to Initiate IPR at 7 (attached as Exh. H).   Claim 20 is thus amenable to construction and not indefinite.

No further construction is necessary, and Defendants appear to agree, having provided no clarifying language.

### I.     "Adjusts said colored display independently of said speedometer"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "wherein said display controller adjusts said colored display independently of said speedometer" (claims 1 and 13) "adjusts said colored display" "adjusts a colored display Adjusts said liquid crystal display | No Construction Necessary. Alternatively, "wherein said display controller alters the colored display (i.e., the device that gives information in a visual form in shades of color) without interrupting operation of said speedometer" "adjusts said colored display:" "alters a/said colored display " "adjusts a colored display:" "alters a colored display | wherein said display controller moves the colored region of the colored display without adjusting the speedometer moves the colored region of the colored display |

No construction is necessary because these words carry their ordinary meaning and the phrase, as a whole, is easily understood.   Defendants' construction does not clarify the meaning of the term; it merely serves to narrow and limit the scope of the claims even narrower than the preferred embodiments.

Again, Defendants attempt to limit the scope of the claims to the mechanical/analog embodiment that has a rotating colored filter creating a colored region.  As discussed above, the specification describes other embodiments such as

the electronic LCD colored display that is not described (and would not be understood) as having a "colored region" that moves.

The modifying adverb "independently," to the extent the parties' construction differ materially warranting any construction at all, describes the relationship between the speedometer operation and the adjustment of the colored display. The inventor added this limitation during prosecution to make clear that the speed limit indicator is capable of warning the driver according to the speed limit at the vehicle's present location rather than merely at a "fixed set of speeds" as the Smith reference disclosed by operation of "an interrupter plate that rotates in conjunction with the speedometer." '074 Patent File History, Nov. 9, 2003 Resp. to O.A. at 7 (attached as Exh. B). By separating the speedometer operation from the colored display adjustment, the inventor made it even clearer that the speed limit indicator was adjusted based upon the speed limit and not dependent solely on the speedometer readout as disclosed in the Smith reference. But Defendants' proposed construction rewrites the claim language reaching a different result.

Under Defendants' proposed construction, the colored display must be adjusted without the speedometer changing. That makes no sense in the context of the claims, which provide for a visual or audible warning or indication of a speeding condition. If that occurs, then the speedometer readout necessarily will be adjusted contemporaneously with the colored display once the warning

threshold is met.  Thus, under Defendants' construction, the invention would not function as described to provide the driver a warning of a speeding condition.

## III.    CONCLUSION

Plaintiff Cuozzo proposes constructions for terms where a genuine dispute exists concerning the scope of the claim terms or their ordinary meaning. Defendants, on the other hand, propose constructions for terms the jury will easily understand and for which the ordinary meaning of the claim language is well known among lay persons.  Their effort is motivated by a desire to limit the scope of the invention to a mechanical/analog embodiment and by a desire to avoid infringement liability. Defendants commit the cardinal claim construction sin of improperly trying to import limitations from the specification into the claims. Defendants' proposals cannot be squared with *Phillips* and its progeny.

OF COUNSEL
Cabrach J. Connor
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel: (512) 474-2449
Fax: (512) 474-2622
*cconnor@reedscardino.com*
*jdeats@reedscardino.com*


David A. Skeels
Todd I. Blumenfeld
FRIEDMAN, SUDER & COOKE
604 E. 4th Street, Suite 200
Fort Worth, TX 76102
Tel: (817) 334-0400
Fax: (817) 334-0401
*skeels@fsclaw.com*
*blumenfeld@fsclaw.com*
*gunter@fsclaw.com*


**ATTORNEYS FOR PLAINTIFF**
**CUOZZO SPEED TECHNOLOGIES LLC**

Bruce Vargo
SCARPONE & VARGO LLC
50 Park Place, Suite 1003
Newark, New Jersey 07102
Tel: (973) 623-4101
Fax: (973) 623-4181
*bvargo@scarponevargo.com*


By:   */s/ Cabrach J. Connor*
Cabrach J. Connor

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of April, 2013, a true and correct copy of the foregoing Opening Claim Construction Brief has been provided, via electronic mail to all counsel of record.

*/s/ Bruce Vargo*
Bruce Vargo
