**LAWRENCE C. HERSH**
Attorney at Law
17 Sylvan Street, Suite 102B
Rutherford, NJ 07070
(201) 507-6300

**NEAL G. MASSAND**
*Admitted Pro Hac Vice*
Ni, Wang & Associates, PLLC
8140 Walnut Hill Lane, Suite 310
Dallas, Texas 75231
(972) 331-4601

*Attorneys for Plaintiff Cuozzo Speed Technologies LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————X
                : Civil Action No. 2:12-cv-3626

Cuozzo Speed Technologies LLC  :
                :

          Plaintiff,  : **MEMORANDUM IN SUPPORT OF**
vs.                  : **PLAINTIFF'S RESPONSIVE CLAIM**
                : **CONSTRUCTION BRIEF REGARDING**
TOMTOM, INC., et al     : **"INTEGRALLY ATTACHED"**
                :

         Defendants.  :
———————————————————————X

## TABLE OF CONTENTS

I.     Introduction ...................................................................................................................... 5

II.    The Patent-In-Suit ........................................................................................................... 6

III.   Arguments and Authorities .............................................................................................. 8

  a.   Applicable Law For Claim Construction ....................................................................... 8

  b.   Defendants Have Not Addressed the Qualifications of a Person Having Ordinary Skill in the Art at the Time of the Invention ....................................................................................... 12

  c.   The Court Should Construe "Speedometer" and "Colored Display" to Inform Its Construction of "Integrally Attached" ...................................................................................... 12

  d.   All of the Intrinsic Evidence Supports Plaintiff's Proposed Construction of "Integrally Attached" 14

    1.   Cuozzo's Construction Reflects the Plain and Ordinary Meaning of "Integrally Attached." 14

    2.   Doctrine of Claim Differentiation Supports Cuozzo's Proposed Construction. ........................ 16

    3.   The Specification Clearly Supports Plaintiff's Proposed Construction ...................................... 19

    4.   The Prosecution History Supports Plaintiff's Proposed Construction ......................................... 20

    5.   Independent Adjustment is Consistent with the Electronic Embodiment's Shared LCD........... 21

    6.   One Skilled in the Art Would Use a Single Shared LCD. ........................................................... 22

  e.   The PTAB's Claim Construction Should Be Given No Weight ....................................... 23

IV.    CONCLUSION ................................................................................................................. 26

# TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Sandoz, Inc.*,
  566 F.3d 1282 (Fed. Cir. 2009) ................................................................... 11

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*,
  261 F.3d 1329 (Fed. Cir. 2001) ................................................................... 10

*Alloc Inc. v. Int'l Trade Comm'n*,
  342 F.3d 1361 (Fed. Cir. 2003) ................................................................... 10

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ................................................................... 10

*Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*,
  401 F.Supp.2d 692 (E.D. Tex. 2005) ........................................................... 16

*Envtl. Designs, Ltd. v. Union Oil Co. of California*,
  713 F.2d 693 (Fed. Cir. 1983) ..................................................................... 12

*E-Pass Techs., Inc. v. 3Com Corp.*,
  343 F.3d 1364 (Fed. Cir. 2003) ................................................................... 10

*FLO Healthcare Solutions, LLC v. Kappos*
  697 F. 3d 1367 (Fed. Cir. 2012) ................................................................. 24

*Grober v. Mako Products, Inc.*,
  686 F.3d 1335 (Fed. Cir. 2012) ................................................................... 11

*Hockerson-Halberstadt, Inc. v. Avia Group Intern., Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) ....................................................................... 9

*In re Morris*
  127 F.3d 1048, 1054 (Fed. Cir. 1997) ........................................................ 24

*In re Swanson*
  540 F. 3d 1368, 1377 (Fed. Cir. 2008) ....................................................... 24

*Innova/Pure Water, Inc. v. Safari Water Filtration  Sys.*,
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................... 16

*KCJ Corp. v. Kinetic Concepts, Inc.*
  223 F.3d 1351 (Fed. Cir. 2000) ................................................................... 18

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................... 9, 11

*MBO Labs., Inc. v. Becton Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) ................................................................... 11

*Merck & Co. v. Teva Pharmaceuticals USA, Inc.*,
  347 F.3d 1367 (Fed. Cir. 2003) ................................................................... 10

*O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ................................................................. 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................. 9, 10, 11, 12

*Safety Rail Source, LLC v. Bilco Co.*,
   656 F. Supp. 2d 468 (D. N.J. 2009) ....................................................... 16

*SK Hynix et al, v. Rambus, Inc.*,
   Case No. C-00-20905 RMW, 2013 U.S. Dist. LEXIS 66554 (N.D. Cal. 2013) ...................... 24

*St. Clair Intellectual Prop. Consultants v. Acer, Inc.*,
   No. 09-354-LPS (consol.), 2012 U.S. Dist. LEXIS 111021, at *17-18 (D. Del. Aug. 7, 2012)
   .................................................................................................. 20

*Sunrace Roots Enter. Co. v. SRAM Corp.*,
   336 F.3d 1298 (Fed. Cir. 2003) ............................................................ 10

*Superguide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) .................................................. 10, 13, 14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ............................................................ 8

## Other Authorities

Robert C. Faber, Landis on Mechanics of Patent Claim Drafting 531 (3d ed. 1990) ................ 18

The New Shorter Oxford English Dictionary
   1386 (1993) ................................................................................ 14

Pursuant to the December 18, 2013, agreed briefing schedule, Plaintiff Cuozzo Speed Technologies LLC ("Cuozzo"), submits this Memorandum in support of its Response to Defendants' Claim Construction Brief Regarding the Claim Term "Integrally Attached" and, in support thereof, respectfully states as follows:

## I.      INTRODUCTION

The Parties' dispute with regard to the claim term "a speedometer integrally attached to said colored display" is whether the colored display is a component of the speedometer, and in particular, whether the colored display can be a liquid crystal display (LCD) that acts as the display component of the speedometer.  The specification of the patent-in-suit, U.S. Patent No. 6,778,074 ("'074 Patent"), attached as Exhibit 1 to the Declaration of Neal Massand, attached hereto as Exhibit A, expressly answers both questions -- the colored display is a component of the speedometer (5:8-10:  "Speedometer 12 has…a colored display 18"), and the colored display can be a liquid crystal display (6:11-14:  "the colored display herein described could also take the form of a liquid crystal display.").  Thus, there can be no dispute that "integrally attached" should be construed as proposed by Cuozzo as "attached or combined to work as a complete unit" to encompass these described and claimed embodiments.

On the other hand, Defendants' proposed construction, "physically joined together as a unit without each part losing its own separate identity," must be rejected for several reasons. First, the plain and ordinary meaning of "integrally attached" does not require the limitations of "physically joined together" or "without each part losing its own separate identity" (whatever the term "identity" means).  Second, this construction contradicts the express statements in the specification that the colored display is a component of the speedometer.  Third, such a construction violates the doctrine of claim differentiation and is contrary to the understanding of one of skill in the art.  Finally, Defendants' sole support is an incorrect and non-binding claim

construction by the Patent Trial and Appeal Board ("PTAB") in IPR2012-00001, which used the "broadest reasonable interpretation" claim construction standard which is distinct from the standard used by federal courts.  Further, the PTAB ignored significant evidence with no explanation whatsoever to arrive at a construction that not only excludes disclosed embodiments, but also excludes claimed embodiments.  The incorrect ruling is the subject of a pending appeal before the Court of Appeals for the Federal Circuit.  It is important to note that this Court must apply a different claim construction standard than the PTAB applied and the PTAB's decision is not entitled to any deference from this Court.

Therefore, Cuozzo's proposed construction of "integrally attached" is correct and should be adopted by this Court.

## II.      THE PATENT-IN-SUIT

Cuozzo is the owner of U.S. Patent No. 6,778,074 titled "Speed Limit Indicator and Method for Displaying Speed and the Relevant Speed Limit" (the "'074 Patent" or "Patent-in-Suit").  The invention disclosed in the '074 Patent relates to "a new and improved speed limit indicator and method for displaying speed and the relevant speed limit that can be used for displaying the current speed of a vehicle and how it relates to the legal speed limit for the current location in which the vehicle is traveling."  Ex. A-1, '074 Patent, 2:18-23.  Implementations of the inventive speed limit indicator provide significant safety benefits, such as:  (1) "allow[ing] the driver to always be aware of the current legal speed limit" without having to look for speed limit signs (*Id*. at 3:63-65); (2) "automatically notify[ing] the driver if he is speeding without requiring him to remove his eyes from the road" (*Id*. at 4:3-6); and (3) allowing the driver to determine quickly whether the vehicle's speed is exceeding the speed limit in the vehicle's current location by looking in a single location—the speed limit indicator (*Id*. at Fig. 1).

The '074 Patent describes several exemplary embodiments of the inventive speed limit indicator.  In all of the embodiments, the inventive speed limit indicator comprises an integrated display of a speedometer and a colored display, and a display controller that adjusts the colored display to show which speed readings are in violation of the legal speed limit at the vehicle's present location (which may be determined by a global positioning system receiver).  In one exemplary embodiment, the colored display is a rotatable, red plastic colored filter disposed over an analog speedometer dial.  Ex. A-1, '074 Patent, 5:8-12.  In another exemplary embodiment, the colored display is a liquid crystal display.  *Id*. at 6:11-14.  In a further exemplary embodiment, the speedometer comprises a liquid crystal display, and the colored display is the liquid crystal display.  *Id*.; *see also* claims 6 and 18.

Importantly, during prosecution of the '074 Patent, the patented invention was distinguished from U.S. Patent No. 6,515,596 issued to Awada and titled "Speed Limit Display in a Vehicle" ( "Awada").  Attached hereto as Exhibit A-2.  Awada discusses a numerical indicator 110 showing the posted speed limit mounted on a dashboard 107 of an automobile, and "a warning light 120 indicates when the vehicle's speed exceeds the posted speed limit."  Ex. A-2, 2:28-32.  Figure 1 of Awada, reproduced below, shows the numerical indicator 110 located to the right of the steering wheel, and the warning light 120 spaced apart from the numerical indicator 110 and aligned with and behind a center of the steering wheel.



*FIG. 1*

Ex. A-2, Awada, Fig. 1.

In response to the rejection based on Awada, the original claims were amended to recite "a speedometer ***integrally*** attached to said colored display." '074 Patent File History, attached hereto as Ex. A-3, pp. 55-57 (inserting the term "integrally" into claims 1, 11 and 20). The Applicant stated:

> ***The cited Awada (6,515,596) lacks a speedometer integrally attached to the speed limit display (column 2, lines 40-42 and Figs. 1 and 4-6)***. The vehicle's driver is forced to look in two separate locations and then mentally compare the speed limit with his vehicle's speed to determine how close he is to speeding if he is not already doing so sufficiently to activate the light and/or tone. This significant complexity could be distracting to the driver, thereby increasing the risk of an accident. ***In contrast, the present invention provides an integrated display allowing the driver to immediately ascertain both his speed and its relation to the prevailing speed limit***.

Ex. A-3, p. 59 (emphasis added). The Applicant did not provide any other arguments with respect to Awada, and the Examiner allowed the amended claims.

### III.   ARGUMENTS AND AUTHORITIES

#### a.  Applicable Law For Claim Construction

The purpose of claim construction is to resolve disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). However, the Federal Circuit has held that courts are not, and should not be, required

to construe every limitation present in a patent's asserted claims.  *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008); *see also* Patent Case Management Judicial Guide, excerpts attached as Exhibit A-4, p. 5-23 (Federal Judicial Center, 2009) ("If a claim term is non-technical, is in plain English, and derives no special meaning from the patent and its prosecution history, then the court has no need to function as a thesaurus. . . . To do so could well encroach upon the factfinder's domain.").

Claim construction is a question of law for the Court to decide.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The Court begins its analysis by examining the claim language itself.  *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l., Inc*., 222 F.3d 951, 955 (Fed. Cir. 2000).  The claim language is paramount to the proper interpretation of claims, since those claims "define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted).  The Court should look at the context of a given disputed claim term, not only within the context of the asserted claim, but also in the context of other claims.  *Id.* at 1314.  As the Federal Circuit has noted, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Id.*; *see also* Patent Case Management Judicial Guide, Ex. A-4, p. 5-59.

After the claim language, the most important type of intrinsic evidence is the patent's specification.  The specification "is always highly relevant to the claim construction analysis… it is the single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315 (citation omitted).  The Federal Circuit has repeatedly emphasized that the claims of a patent "must be construed so as to be consistent with the specification."  *Merck & Co. v. Teva Pharm. USA, Inc.*,

347 F.3d 1367, 1371 (Fed. Cir. 2003).  However, the specification should not be read to limit the scope of the invention as described in the patent claim, because it sometimes describes just one way of practicing the invention—the "preferred embodiment" of the invention. *See Phillips*, 415 F.3d at 1323.

> Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim.  For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.

*Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *see also E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003) (Courts should interpret claims "in view of the specification" without unnecessarily importing limitations from the specification into the claims); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1339 (Fed. Cir. 2001) (the fact that all of the drawings depict particular elements does not support adding limitations to the claims); *Alloc Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (importing limitation permissible only where "the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment").  A patent applicant is not required to include every conceivable embodiment of his invention.  *Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed. Cir. 2003).  To improperly limit the claims in this way would be to commit   "cardinal sin of claim construction."  *SciMed Life Sys., Inc.*, 261 F.3d at 1340.  For this reason, the Federal Circuit has cautioned that it is improper for a court to "import[ ] limitations from the specification into the claims absent a clear disclaimer of claim scope."  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1373 (Fed. Cir. 2007).  The "clear disclaimer" requirement is satisfied only if there is "a clear disclosure that the patentee intended the claims to be limited as shown."  *MBO Labs.,*

*Inc. v. Becton Dickinson & Co.*, 474 F.3d 1323, 1334 (Fed. Cir. 2007); *Phillips*, 415 F.3d at 1323.

After the specification, another important source of intrinsic evidence is the prosecution history of the patent.  Though often not as clear as the specification, the communications between the applicant and the patent examiner may reveal the "ordinary meaning" of a claim term, *i.e.*, these communications may show the meaning of the claim in the context of the patent. *Phillips*, 415 F.3d at 1317.  While the prosecution history can inform whether the inventor limited the claim scope in the course of prosecution, it often produces ambiguities created by ongoing negotiations between the inventor and the PTO.  *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012), *reh'g denied* (Sept. 14, 2012).  The prosecution history should not be used to limit the meaning of the claim absent a clear disclaimer of the scope of the patent to avoid prior art.  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009).

The Federal Circuit has authorized judges to rely on extrinsic evidence if the Court "deems it helpful in determining the true meaning of language used in the patent claims." *Phillips*, 415 F.3d at 1318 (quotation omitted).  Extrinsic evidence, however, is "less significant than the intrinsic record" for determining the meaning of the patent claims.  *Id*. at 1317. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980 (citation omitted).  Extrinsic evidence, if used by a court, must be considered in the context of the intrinsic evidence.  *Phillips*, 415 F.3d at 1319.  Further, since claims must be interpreted through the eyes of one skilled in the art at the time of the invention, the court may find guidance in extrinsic evidence that demonstrates how one skilled in the art, reading the

claims at the time of the invention, would have interpreted the words of the claim, so long as the extrinsic evidence does not contradict the intrinsic evidence.  *Id.* at 1313, 1324.

### b. Defendants Have Not Addressed the Qualifications of a Person Having Ordinary Skill in the Art at the Time of the Invention

As noted above, claim terms are generally given their plain and ordinary meaning as understood by one of skill in the art at the time of the invention.  The Federal Circuit has set out a number of factors a court should consider in determining level of ordinary skill in the art, including: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field.  *Envtl. Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).  In any given case, not all such factors may be present and one or more factor may predominate over another. *Id.*

In their Brief, Defendants have not addressed, in any respect, the qualifications of a person having ordinary skill in the art at the time of the invention, yet profess that their proposed construction comports with the understanding of such a person.

Plaintiff contends the a person of skill in the art at the time of the invention would have a bachelor's degree in science or engineering with a general understanding of electronic systems, design and/or engineering or equivalent experience or training.  Since Plaintiff's position is undisputed, it should be adopted by the Court.[1]

### c. The Court Should Construe "Speedometer" and "Colored Display" to Inform Its Construction of "Integrally Attached"

---

[1] Furthermore, as previously cited in Doc. No. 71-2, Plaintiff's expert, Dr. Morris, was asked at his deposition for his opinion on the appropriate level of skill in the art for the '074 Patent and, more specifically, for the subject matter on which he had opined.  Dr. Morris agreed with Plaintiff, stating, "I would say possibly by being a computer science student or computer engineer, [such a person] would certainly have the skill to know about how to program bitmap displays or LCD displays."  Morris Deposition, Doc. No. 71-2.

The term "integrally attached" describes the relationship between the claimed "speedometer" and "colored display," and thus it seems fundamentally clear that the terms "speedometer" and "colored display" should be construed before (or in addition to) construing "integrally attached."  That is, it would be difficult, if not impossible, to define a relationship between two things as "integrally attached" unless one knows what those two things are.  Thus, contrary to Defendants' assertion that the Court need not address the constructions of "speedometer" and "colored display" when construing "integrally attached," Plaintiff believes it is absolutely necessary to construe "speedometer" and "colored display" before (or in addition to) construing "integrally attached."

As explained in Plaintiff's Responsive Markman Brief, "speedometer" should be construed as "an instrument with components for measuring and displaying speed."  Responsive Markman Br. 8-11.  In brief, the claims and specification support Plaintiff's proposed construction, describing exemplary "display" components of the speedometer – "a needle", "speed denoting markings", "a liquid crystal display" – and exemplary "measuring" components of the speedometer – "a speedometer cable".  Defendants' proposed construction should be rejected, because it requires "speed denoting markings" which imports a limitation from an exemplary embodiment into the claims and improperly renders at least claim 5 ("plurality of speed denoting markings") redundant.  *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d at 875.

As explained in Plaintiff's Responsive Markman Brief, "colored display" should be construed, to the extent it requires construction, as "a device for presenting information in one or more colors."  Responsive Markman Br. 4-7.  In brief, the claims and specification support Plaintiff's proposed construction, describing exemplary embodiments of the "colored display" as

"a liquid crystal display" (claim 2) and "a colored filter" (claim 3).  Defendants' proposed construction should be rejected, because it requires "a colored region for presenting speeds above the legal speed limit" which contains the vague term "colored region" (a phrase not used anywhere in the '074 Patent, except in Figure 2 with respect to the *speedometer*) and would improperly render express claim language ("a colored display to delineate which speed readings are in violation of the speed limit") redundant. *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d at 875.

Therefore, Plaintiff respectfully submits that "speedometer" and "colored display" should be construed prior to (or in addition to) construing "integrally attached."

**d.   All of the Intrinsic Evidence Supports Plaintiff's Proposed Construction of "Integrally Attached"**

| Claim Term | Cuozzo's Construction | Defendants' Construction |
|---|---|---|
| Integrally Attached | Attached or combined to work as a complete unit. | Physically joined together as a unit without each part losing its own separate identity. |

1.   Cuozzo's Construction Reflects the Plain and Ordinary Meaning of "Integrally Attached."

The '074 Patent uses the term "integrally attached" according to its plain and ordinary meaning.  The word "attached" is generally defined to mean "connect[ed] or join[ed]; to connect as an adjunct or associated part."  Webster's II New College Dictionary 72 (1999) (attached as Ex. A-5).  The word "integrally" is generally defined to mean "necessary to the completeness of the whole; consisting or composed of parts that together constitute a whole" or formed as a unit with another part.  Random House Webster's Unabridged Dictionary 990 (2001) (attached as Ex. A-5); *see also*, The New Shorter Oxford English Dictionary 1386 (1993) ("necessary to the completeness or integrity of the whole, not merely

attached") (also included in Ex. A-5).  Plaintiff's proposed construction is consistent with the plain and ordinary meanings of "attached" ("joined or combined") and "integrally" ("joined to work as a complete unit").

Defendants' proposed construction conflicts with the plain and ordinary meaning of the term for at least two reasons.  First, it adds several extraneous, and thus potentially narrowing, limitations to the term.  For example, their construction requires "discrete parts" that are "physically" joined.  There is no support for these limitations based on the plain and ordinary meaning of the term "integrally attached," as neither concept is found in any of the definitions. Defendants also require joining the parts but "without each part losing its own separate identity."   In every mechanical and electrical situation in which two parts are attached, they always keep their respective identities.   The only time "parts" might lose their separate identities is perhaps a chemical context in which a reaction takes place, and the resulting product cannot be separated into the original "parts."  However, that is certainly not the case here, and there is no support in the plain and ordinary meaning of "integrally attached" which supports Defendants' limitation.

Second, Defendants' proposal gives no substantive meaning to the term "integrally." The word "attached" without the "integrally" modifier is used in other claims of the '074 Patent, and it appears that Defendants' construction would similarly apply to the meaning of "attached" alone.  For example, claim 15 recites, inter alia, "a needle" and "an axle having opposing ends with one end attached to said needle."   In this claim, Defendants' construction of  "integrally  attached" would apply to the use of "attached"—*i.e.*, there are "discrete parts" (the axle and the needle) that are "physically joined together as a unit" (one end of the axle is physically joined with the needle) and "without each part losing its own

15

separate identity" (the needle is still the needle and the axle is still the axle).  In construing claim language, each term in a claim must be given meaning.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).  Cuozzo's proposed construction gives meaning to "integrally" in that the parts "work as a complete unit" such that one part is a component of the other part or a component is shared by the parts.  The Court reached a similar conclusion in *Safety Rail Source, LLC v. Bilco Co*., 656 F. Supp. 2d 468 (D. N.J. 2009) in construing the term "integrally connecting."   Rejecting a proposed construction that merely required "that parts be joined to form a whole," the Court reasoned that weight must be given to "integrally."  *Id*. at 483 (*quoting Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp*., 401 F.Supp.2d 692, 699-700 (E.D. Tex. 2005) ("If attached or connected is all that is meant, then what purpose is served by integrally?  Integrally implies something  that is part of the whole or is needed for completeness") (internal quotations omitted) (*citing* Merriam-Websters Collegiate Dictionary 606 (10th ed. 2002), which is consistent with the definitions Ex. A-6)).  Ultimately, the Court in *Safety Rail Source* construed "integrally connecting" as: "integrally connecting requires that the connected pieces be joined so as to make up a single complete piece or unit, in such a way that the connection becomes part of [the single complete unit]."   656 F. Supp. 2d at 468 (internal quotations omitted).  The Court's conclusion is similar to Cuozzo's proposed construction ("joined or combined to work as a complete unit") because they both comport with the plain and ordinary meaning of "integrally attached."

    2.   Doctrine of Claim Differentiation Supports Cuozzo's Proposed Construction.

Fundamentally, an independent claim must have a broader scope than the claims which depend from it, and different terms in different claims are presumed to give each claim a different scope.  Independent claims 1 and 10 recite that the "speedometer [is]

integrally attached to [the/said] colored display."  As mentioned above, several claims which depend directly or indirectly from claims 1 and 10 are presumed to have a narrower scope and illustrate why Defendants' construction is erroneously narrowed.  They also confirm that independent claims 1 and 10 must, in fact, encompass the case of a single electronic display that itself operates as a display component of a speedometer and a colored display.

For example, claim 10 and the dependent structure of certain of its dependent claims are shown schematically below to illustrate that the term "integrally attached" should be given a construction which encompasses a single electronic display that operates as a display component of a speedometer and a colored display.



Based upon the limitations recited in the dependent claims, "integrally attached" in claim 10 should be construed to encompass both mechanical and electronic embodiments of the invention.  Dependent claim 14 is directed to a mechanical embodiment of the colored display of the present invention, and dependent claims 15 and 16 recite limitations which are directed to a mechanical embodiment of the speedometer (claim 15—"said speedometer

comprises"; claim 16—"said speedometer further comprises") of the present invention.  For

example, the axle, the speedometer cable, the backplate, the plurality of speed denoting

markings affixed to the backplate, and the housing enclosing the backplate are mechanical

elements of an embodiment of the speedometer.[2]   In contrast, claims 12 and 18 are directed

to electronic embodiments of the invention.  Professor Morris explained that one skilled in the

art would understand these distinct mechanical and electronic embodiments from the

disclosure, because modifying a mechanical embodiment with a rotating LCD colored

display, for example, would not make sense.  *See* Ex. A-6, Morris Decl. at ¶¶ 24-28.

Dependent claim 12 requires the colored display to be a liquid crystal display, and

dependent claim 18 requires that the speedometer comprises a liquid crystal display.  Neither

claim 12 nor claim 18 require the speedometer's liquid crystal display to be separate from

the colored display's liquid crystal display.   In fact, the use of the open-ended term

"comprising" and the antecedent "a" in claim 18 indicates that the speedometer includes,

but is not limited to, "one or more" liquid crystal displays.  It is commonly understood that

the "indefinite article[s] 'a' or 'an' in patent parlance carr[y] the meaning of 'one or

more' in open-ended claims containing the transitional phrase 'comprising.'"  *KCJ Corp. v.

Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000); *see also* Robert C. Faber,

Landis on Mechanics of Patent Claim Drafting 531 (3d ed. 1990).   Thus, claim 18 would

certainly encompass a single electronic display that itself operates as the display component

of a speedometer and a colored display. Because claim 18 depends on claim 10, claim 10 has

a broader scope than claim 18, and "integrally attached" should not exclude a single

---

[2] Notably, the dependent claims require that the speedometer comprises "display" components (e.g., "speed denoting markings") and "non-display" components (e.g., "speedometer cable").  The dependent claims, therefore, clearly supports Plaintiff's proposed construction of "speedometer" as "an instrument with components for measuring and displaying speed."

electronic display that itself operates as a the display component of a speedometer and a colored display.

Cuozzo's proposed construction ("joined or combined to work as a unit") encompasses all of the described embodiments of the invention, and given the recitation of dependent claims 12 and 18, must encompass a single electronic display that itself operates as the display component of a speedometer and a colored display.

### 3. The Specification Clearly Supports Plaintiff's Proposed Construction

The specification of the '074 Patent makes crystal clear that the colored display is a component of the speedometer. In describing one embodiment of the invention, the specification states, "Speedometer 12 **has** . . . a colored display 18 . . . ." Ex. A-1 at 5: 8-10 (emphasis added). In describing other embodiments of the invention, the specification similarly lists the colored display 18 as a component of the speedometer 12. *Id*. at 5:45-51 ("has a housing 28 containing backplate 14, colored display 18, axel 30, needle 20, and display controller 36."); 5:58-60 ("has a backplate 14, colored display 18, housing 28, and axle 30."). Figure 2 of the '074 Patent further confirms that the "colored display" is a component of the "speedometer." As the vehicle changes locations, vehicle speeds up to the speed limit are "displayed on white speedometer region," while vehicle speeds above the posted speed limit are "displayed on red speedometer region." *Id*. at Figure 2 (emphasis added). Therefore, the colored display 18 is, like the speed denoting markings 16 and the needle 20, a component of the speedometer 12, and as a component of the speedometer 12, the colored display 18 is joined or combined with the speedometer 12 to work as a unit, *i.e.*, a speed limit indicator that provides an integrated display for the driver.

Defendants' proposed construction excludes the embodiment in which the colored display 18 is a *component* of the speedometer 12 (Ex. A-1 at 5: 8-11) and the colored display "take[s] the form of a liquid crystal display." *Id.* at 6: 11-14. Claim 2, for example, recites that the "colored display is a liquid crystal display," and claim 6, for example, recites that the "speedometer comprises a liquid crystal display." There is no claim or any disclaimer in the description that requires the colored display and the speedometer to be separate liquid crystal displays. Without such a clear disavowal of claim scope, "integrally attached" should be construed to encompass a device in which the colored display and the speedometer share a single liquid crystal display. *St. Clair Intellectual Prop. Consultants v. Acer, Inc.*, No. 09-354-LPS (consol.), 2012 U.S. Dist. LEXIS 111021, at *17-18 (D. Del. Aug. 7, 2012) (claim terms should have their plain and ordinary meaning if there is "no inventor lexicography, disavowal, or disclaimer that would justify a departure from the plain meaning as understood by a person having ordinary skill in the art."). Professor Morris explained how these disclosures, in his opinion, would teach one of skill in the art "to combine the speedometer readout with the speed limit information on the LCD." Ex. A-6, Morris Decl., at ¶¶ 27-29. The resulting electronic embodiment would have a common LCD component shared by the speedometer and colored display. *Id.* at ¶ 32. Cuozzo's proposed construction, "joined or combined to work as a complete unit" properly includes the exemplary embodiments of the invention claimed and described in the '074 Patent.

### 4. The Prosecution History Supports Plaintiff's Proposed Construction

During prosecution of the '074 Patent, the Examiner allowed amended claims reciting, "a speedometer integrally attached to said colored display," over Awada. As Defendants acknowledge, the Examiner asserted that the warning light 120 of Awada could be any type of

display and the speedometer interface 264 could have any type of display, i.e., that Awada discussed two separate displays.  Ex. A-3 at __.  ("Awada fails to specifically specify the type of colored display and the speedometer display….Since Awada mentioned that any type of display could be employed for both the colored display and the speedometer display, it would have been obvious to one of ordinary skill in the art at the time the invention was made to employ any well-known display, such as the liquid crystal display, colored filter, in the colored/speedometer display of Awada for performing the same function as desired.").  Thus, as Defendants admit, the Examiner rejected the pending claims (which recited that the speedometer and colored display were "attached"), because Awada allegedly discussed a warning light display and a separate speedometer interface display.

In response to the rejection, the inventor amended the claims to recite that the speedometer and colored display were "integrally attached," and the Examiner allowed the amended claims over Awada.  The inventor explained that the claims, as amended, required one display so that a driver is not forced to look at two separate displays like in Awada.  Ex. A-3, p.59 ("***The vehicle's driver [in Awada] is forced to look in two separate locations***…***In contrast the present invention provides an integrated display*** allowing the driver to immediately ascertain both his speed and its relation to the prevailing speed limit.") (emphasis added).

Therefore, the prosecution history clearly supports Plaintiff's proposed construction which requires that the colored display is a component of the speedometer, not a separate display device as discussed in Awada.

5.   Independent Adjustment is Consistent with the Electronic Embodiment's Shared LCD.

Contrary to the Defendants' suggestion, an embodiment having a single LCD as part of an integrally attached speedometer and colored display provides the ability to

independently adjust the colored display. As Dr. Morris explained during his recent deposition, "there is a well-known method called the Painter's algorithm" for controlling the colored pixels on a liquid crystal display that independently "paints" images on the LCD (Doc. No. 71-2, p. 69, l. 9-p. 70., l. 3):

> There is a well-known method called the Painter's algorithm, where you might find in the software embodiment two separate sections of code, one of which handles the background, speed limit data, and one of which handles the indicator of speed. And, in fact, whenever the speed or the speed limit changes, you would find that those two pieces of software would be executed in a specific order, namely the background first and the indicator second, so that it appeared that the indicator was on top of the background. So the integration -- so there is a sense in which those things are still slightly separate, even inside the software. So for anybody except the software engineer, they'd say, oh, well they're completely mixed together. They're completely integrated. But at a very detailed level, those two original things which were separate still sort of might likely be represented by two different parts of the software.

Defendants present no evidence or intrinsic support for their contention that what Dr. Morris described is impossible.

### 6. One Skilled in the Art Would Use a Single Shared LCD.

Nothing in the specification or in the claims requires the display component of the speedometer and the colored display to be separate devices. That would serve no objective of the invention and as Dr. Morris testified, "one LCD is cheaper than two LCDs . . . That's for sure," so the stated goal to have a "low cost of manufacture" would not be served by Defendants' construction. Dr. Morris also detailed the bases for his opinion (*see* Plaintiff's Opening Br. at 13 and Ex. F thereto) that one skilled in the art, upon reading the '074 Patent record, would practice the electronic embodiment by "combin[ing] the speedometer readout with the speed limit information on the LCD

| 21 | Q But it would be possible to attach an LCD |
| 22 | display to a mechanical speedometer that includes a |
| 23 | needle; right? |

> 21      Q   But it would be possible to attach an LCD
> 22   display to a mechanical speedometer that includes a
> 23   needle; right?
> 24      A   Yes.  That would be possible, but let's
> 25   say if the -- as I recall, the claims of the patent

> 1    said somewhere after Claim 10, I think 12 and 18
> 2    said at different places, oh, the speedometer can
> 3    be on an LCD display and the -- let's say the speed
> 4    indicator can be in an LCD display, and the speed
> 5    level limits can be on an LCD display.  At that
> 6    point no engineer would say we're going to have two
> 7    separate LCD displays here, even though those two
> 8    things were mentioned in two different places.
> 9    That would be inconceivable to say, oh, well, let's
> 10   have one LCD display doing this and another LCD
> 11   display attached to it and spinning around an axis.
> 12   Please, no.  This will make the thing 100 times
> 13   more expensive, and I don't even know whether it
> 14   will work.

Doc. No. 71-2, p. 38, l. 21-p. 39, l. 14.   Again, Defendants present no contradictory evidence

in support of their argument about the perspective of one skilled in the art.

### e.   The PTAB's Claim Construction Should Be Given No Weight

The PTAB's construction of "integrally attached" should be given no weight for several

reasons.  First, the PTAB's claim construction standard ("broadest reasonable interpretation") is

fundamentally different than the standard set forth by the Federal Circuit in *Phillips v. AWH*

*Corp.*.  Second, rather than properly apply the required "broadest reasonable interpretation"

standard, the PTAB construed the term so narrowly as to read embodiments out of the claims.

Additionally, it is undisputed that the PTAB's decision is not entitled to any deference as only the decision of the Court of Appeals for the Federal Circuit is binding on this Court. *SK Hynix et al, v. Rambus, Inc.*, Case No. C-00-20905 RMW, 2013 U.S. Dist. LEXIS 66554 *13 (N.D. Cal. 2013).

The PTAB (which was formerly known as the Board of Patent Appeals and Interferences) is required to construe claims according to their broadest reasonable interpretation in view of the specification. *FLO Healthcare Solutions, LLC v. Kappos*, 697 F. 3d 1367, 1377 (Fed. Cir. 2012). The ostensible purpose behind the PTO's use of the broadest reasonable interpretation of an applicant's proposed claim is to allow the examiner and the applicant to explore the possible scope of the claim, particularly as it implicates prior art, and to provide opportunity during the review process for clarification and refinement of the claim language. *Id*. at 1378-9. In that sense it is an administrative tool used by the PTO aimed at fashioning claims that are precise, clear, correct, and unambiguous, a goal much to be desired. *Id*. In applying the broadest reasonable interpretation, the PTAB applies to the verbiage of the proposed claims the broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in the applicant's specification. *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997). PTO examination procedures, such as proceedings before the PTAB, have distinctly different standards, purposes, and outcomes compared to civil litigation. *In re Swanson*, 540 F. 3d 1368, 1377 (Fed. Cir. 2008). The PTAB and the district court take different approaches to making determination on the same evidence and could quite correctly come to different conclusions. *Id.*

In the IPR, the PTAB made several self-contradictory and readily identifiable errors in construing "integrally attached."

First, the PTAB never construed "speedometer" or "colored display" but stated, "[f]or a speedometer to be 'integrally attached' to a colored display, there must be a speedometer and a colored display that are separately identifiable from each other, or else 'attached' effectively would be read out of the claim."  IPR Final Decision, Ex. A-7 at 9.  Such a statement completely contradicts the express statement in the specification that the "speedometer 10 has…a colored display 18."

Second, the PTAB contradicted its own rationale, acknowledging, "[t]hat does not mean the speedometer and the colored display may not share any part."  *Id*.  Thus, the PTAB acknowledged that the colored display could, in fact, be the display component of the speedometer.  However, the PTAB attempted to justify its construction stating, "the sharing may not be so substantial, e.g., the entirety of the colored display is subsumed within the speedometer, that the speedometer and the colored display lose their separate identities."  *Id*. Effectively, the PTAB is saying that if item A is a component of item B, item A no longer has its own "identity" (whatever that means).  A simple example points out the error in the PTAB's rationale, "a car is integrally attached to a wheel."  Clearly, the term "car" typically refers to a vehicle with four wheels, but the "wheels" do not lose their identities simply because they are attached to the car, and the term "car" can be used even when the wheels are removed (though the car may no longer be functional).  The speedometer/colored display relationship is the same as the car/wheel relationship.

Third, the PTAB attempts to support its construction with a plainly erroneous reading of the prosecution history.  The PTAB states, "Figure 1 [of Awada] illustrates a display 110,

separate and remote from the speedometer, which shows the speed limit. Display 110 showing the speed limit is located at a substantial distance from ***the speedometer, which is located at a conventional location within the dashboard of the vehicle***." *Id*. at 13. As explained above, Awada never discusses the display component of its speedometer interface 264. In fact, in Awada, there does not appear to be any display component for the speedometer interface 264, which interacts directly with a central processing unit 254. Ex. A-2, Figure 2D; 4:34-36 ("Optionally, information about the vehicle's current speed may be obtained through a speedometer interface 264 and reported to the CPU 254."). Thus, Awada never discusses a speedometer display located on the vehicle dashboard, as alleged by the PTAB.

Therefore, in light of the PTAB's failure to apply the correct standard resulting in an incorrect, unduly narrow construction, the PTAB's construction of "integrally attached" should be disregarded.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's proposed construction of "integrally attached" should be adopted.

Respectfully submitted,

By: /s/ Lawrence C. Hersh
Lawrence C. Hersh
17 Sylvan Street, Suite 102B
Rutherford, New Jersey 07070
Telephone (201) 507-6300
Facsimile  (201) 507-6311
lh@hershlegal.com


Neal G. Massand
*Admitted Pro Hac Vice*
Ni, Wang & Massand, PLLC
8140 Walnut Hill Lane, Suite 310
Dallas, Texas 75231
(972) 331-4601


*Attorneys for Plaintiff Cuozzo Speed
Technologies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system on this 3rd day of February, 2014.

*s/ Lawrence C. Hersh*
Lawrence C. Hersh